**IN THE UNITED STATE DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA, AT MARTINSBURG**

STEVEN LYONS, Jr.,
Plaintiff,

v.                                                      CIVIL ACTION NO.:_____
                                                                          **3:23-CV-29 (Groh)**

BLACK ROCK WIND FORCE, LLC , a
wholly owned subsidiary of Clearway Energy Group, LLC
and CLEARWAY ENERGY GROUP , LLC,
Defendants.

ELECTRONICALLY FILED
02/09/2023
U.S. DISTRICT COURT
Northern District of WV

## COMPLAINT AND REQUEST FOR JURY TRIAL

Plaintiff, Steven Lyons, is the owner of certain real property located in Mineral County, West Virginia, and more particularly described in the Mineral County Clerk's office in deed book 374 at page 731, and hereby files the instant Complaint against the aforestyled Defendants and in support of their claims allege the following:

### INTRODUCTION

1. The following pled causes of action involve claims of substantial and unreasonable injury and/or interference caused by Defendants which significantly negatively affects Plaintiff's personal health and well-being and/or their right to reasonable use and enjoyment of their property, and including the loss of value to their real property interests as a direct and proximate result of Defendants construction and continuously operating a "Wholesale Electric Generating Facility" known as the Black Rock Wind Farm (hereinafter "BRW") in Mineral and Grant Counties, West Virginia. On or about February 10, 2022, the Defendants or their representatives announced that BRW had commenced generation of electrical power at this 23-turbine facility. Since February 10, 2022 or thereafter, Defendant

or Defendants, or each of them, as their interests may appear and as each entity's direct or indirect conduct effected the ultimate generation of electrical power, has continuously and unreasonably interfered with the personal and property rights of Plaintiff as will more particularly and specifically be pled hereinafter.

## PARTIES

2. Plaintiff is an individual residing in Mineral County and real property owner of the identified property in the preceding "INTRODUCTION" paragraph. Upon information and belief, portions of the same real property are located beginning less than one (1) mile from the offending commercial wind turbines. Plaintiff can view 23 (twenty-three) utility scale wind turbines while standing within the boundaries of their property.

3. By information and belief, Defendant Clearway Energy Group LLC (hereinafter "CLEARWAY") is a Delaware limited liability company with its principal location believed to be at 100 California St., Suite 400 San Francisco, California 94111. Said Defendant is the owner of the siting certificate issued or approved by the West Virginia Public Service Commission. This Defendant's agent for acceptance of service of process is CT Corporation System, 5098 Washington St. W., Suite 407, Charleston, WV 25313.

4. Upon information and belief, Defendant Black Rock Wind Force, LLC (hereinafter "BLACK ROCK"), is a Delaware limited liability company with its principal location believed to be at 100 California St., Suite 400 San Francisco, California 94111. Said Defendant, by information is believed to be a wholly owned subsidiary of "CLEARWAY". This defendant's agent for acceptance of service of process is CT Corporation System, 5098 Washington St. W., Suite 407, Charleston, WV 25313.

## JURISDICTION AND VENUE

5. The BLACK ROCK WIND FARM is wholly located in Grant and Mineral Counties, West Virginia. Jurisdiction is predicated upon diversity of citizenship of the parties pursuant to 29 U.S.C. Section 1332, and that the amount in controversy exceeds $75,000.00.

## UNDERLYING FACTS

6. On or about May 10, 2019 BLACK ROCK filed its application for a siting certificate to construct a commercial wind generation facility pursuant to West Virginia Code Section 24-2-11c and the West Virginia Public Service Commission (hereinafter, "WVPSC"), siting rules. The project, known as the BLACK ROCK WIND FARM, originally envisioned as a larger array of commercial wind turbine generators, was later modified to include 23 Siemens-Gamesa SG 5.0-145 wind turbines on Towers 107.5 m tall. (See WVPSC Case No.19-0483-E-CS and 20-0787-E-CS-PW).

7. On November 19, 2019, the WVPSC entered its "Commission Order Granting A Siting Certificate For A Wholesale Electric Generating Facility In Grant And Mineral Counties, West Virginia" to Defendant Black Rock Wind Force, LLC. and approved the construction of the requested generators and application identified in the preceding paragraph.

8. On December 17, 2020, the WVPSC entered its "Commission Order" finding that a proposed software modification to the wind turbines proposed by defendant "BLACK ROCK" did not constitute a material modification of its siting certificate (although an

increase in .6 dB[A] was envisioned), therefore allowing for a software adjustment which would permit the turbines to be operated up to 5.0 MW or down to 4.2 MW.

9. Following receipt by Defendants of the "Final Order of the WVPSC", Defendants commenced construction of the BLACK ROCK WIND FARM during which extended period of construction time created excessive noise (trucks, air hammers and blasting, among other incidentals), dust and unreasonable interference with the peaceful use and enjoyment of Plaintiff's real property, which at certain periods of time currently, the same construction, modification or maintenance efforts can unreasonably interfere with the peaceful use and enjoyment of Plaintiff's real property.

10. The 23-turbine array of commercial wind generators are wholly located within Grant County or mineral County, West Virginia. Neither Grant County or Mineral County have any current nor did they at the time during which defendants sought permission to construct "BRW", nor anytime, have in place any specific land use restrictions or guidelines applicable to the siting of commercial turbines, which were enforced.

11. That prior to February 10, 2022, by information, Defendants or Defendant notified the WVPSC that it planned to begin commercial operations of the project on or about February 10, 2022. Upon information and belief, commercial operation did begin on or about February 10, 2022.

12. By information and prior to February 10, 2022, Defendants or Defendant sought certification of the subject project as a renewable energy facility pursuant to all State and Federal regulations and did receive the same certification.

13. Plaintiff owned their real property prior to the initiation of any application to construct the BLACK ROCK WIND FARM, or prior to initiation of construction.

14. Specifically, Plaintiff's property line is less than one (1) mile from the closest commercial wind turbine. (Exact distance will be closer than the distance the residence structure is on the real property.)

15. Beginning no earlier than February 10, 2022, and continuing unabated on an approximate daily basis, the utility scale wind turbines have generated both blade and turbine and other wind seeking noises which has and continues to significantly, adversely, and unreasonably and substantially affect Plaintiff in the use and enjoyment and further development of their real property.

16. Specifically, while Plaintiff is outside on their property, they are confronted with irritating and unabated audible noise which often significantly limits the use and enjoyment of their property and results in annoyance along with other symptoms, some of which are included in the list containing, headaches, hearing problems, anxiety, irritability and other physical symptoms and associated mental and emotional harm, among other effects, including but not limited to further development or enjoyment of their real property for personal use.

17. While Plaintiff is inside their residence or outbuildings, if any, and/or when standing or utilizing their real property they experience some of or all of the following: disturbed sleep, headaches, rapid heartbeat, anxiety and nervousness, an inability to clear ears, fatigue, vertigo, depression, tinnitus, irritability and anger from both audible noises, non-audible infra sound, often sensed as a vibration or pressure change rather than heard and perhaps shadow/light flicker.

18. The effect of the continuing operation of the BRW, with respect to the acoustic energy emitted by it in any form perceivable by Plaintiff, is more severe and may vary in its intensity depending upon the configuration of blades and turbines and the rate at which the blades may turn.

19. Plaintiff believes that to a significant degree the monetary value of their real property has been negatively affected by the presence and operation of the BRW. Plaintiff believes that this devaluation of their real property is not less than 30% to 50% and may be much greater but would defer to expert analysis.

20. The presence of the BRF so close to their residence and/or real property has substantially and unreasonably negatively affected the Plaintiff's quiet use and enjoyment of living and enjoying the previously tranquil rural - wilderness country setting resulting in emotional stress including irritability, anxiety, sadness and despondency, among other negative effects.

21. The presence of the utility scale wind turbines installed at the very close edge of their real property depending upon the manner in which the turbine end blades are configured, causes exacerbation of personal, mental and emotional or physically negative effects as pled herein and has destroyed the viewshed of their previously tranquil and beautiful mountain setting.

22. The presence of the utility scale wind turbines as sited has already and will for the duration of their operating life, estimated at 15-20 (fifteen to twenty) years or more, substantially and unreasonably affect the serenity, ambience, wildlife viewing and aesthetic nature of the real property and its use by its Plaintiff and its individual family members and their guests and extended family.

23. The operation of the BRF continues to produce unreasonable and significant negative consequences to Plaintiff's personal mental, emotional and physical wellbeing in addition to continuing to unreasonably interfere with the expected or anticipated use and enjoyment of their real property and, significantly contributed to a loss or devaluation of Plaintiff's real property. The initial and continuing operation of BRW project has unreasonably interfered with the use and enjoyment of the Plaintiff's property along with unreasonably affecting the Plaintiff's health and well-being when utilizing this property for its intended recreational purposes. Plaintiff believes BRF will continue to operate in a manner similar to its past and present and so will continue to impact Plaintiff for the foreseeable future.

24. Defendants, individually and collectively, knew or should have known that this project would unreasonably interfere with Plaintiff's use and enjoyment of their property, adversely affect the Plaintiff personally and would result in negative physical and associated mental and emotional harm and otherwise has adversely affected the value and use and enjoyment of their real property.

25. At no time has Plaintif contributed whatsoever to the harm described herein.

26. Plaintiff's right to address Defendants' conduct exists independently of the issuance of any public  governmental permits.

**COUNT I**
**NUISANCE**

27. Plaintiff repeats and incorporates by reference all allegations contained in paragraphs 1 through 26 of this Complaint as if set forth verbatim herein.

28. Defendants' unreasonable and/or intentional construction, maintenance, modifications and operation of BRF causes substantial and unreasonable injury or interference to Plaintiff's use and enjoyment of their property.

29. The interference is so substantially unreasonable as to cause Plaintiff to suffer a significant diminution in the use and value of their real property and many personal physical and associated emotional and mental harm and including at various times and dependent upon which individual plaintiff some if not all of the following adverse physical symptoms inclusive of: annoyance, headaches, hearing problems, joint pain, dizziness and vertigo, rapid heartbeat, tinnitus, nervousness, sleeplessness and associated mental and emotional

symptoms including irritability, anxiety, depression, sluggishness, anger, distractibility, significant annoyance and other symptoms enumerated herein. The physical, mental and emotional symptoms identified herein and suffered by Plaintiff, are directly and proximately caused by Defendants' conduct and shall continue for the reasonably foreseeable future, if not becoming more pronounced and debilitating as time progresses. It is further reasonably anticipated that at some point in the future, Plaintiff will most likely be forced to abandon or relocate, or sell the same or not develop and use their real property as anticipated.

30. Defendants' conduct imposes immediate, substantial and irreparable injury to Plaintiff. Such injury will continue to result before an adversarial hearing can be conducted. No adequate remedy at law is available to Plaintiff, who will be forced to institute a lawsuit to recover for the continuing harm caused by this nuisance.

**WHEREFORE**, Plaintiff prays this Court enter an injunction abating the nuisance caused by Defendants, or in the alternative, if this Court deems abatement to be improper, enter judgment against Defendants for compensatory and punitive damages in an amount in excess of $75,000.00 with interest and costs and for such other and further relief as this Court shall deem just and proper, both at law and equity.

## COUNT II
## NEGLIGENCE

31. Plaintiff repeats and incorporates by reference all allegations contained in paragraphs 1 through 30 of this complaint as if set forth verbatim herein.

32. Defendants have a duty not to conduct operations which in the exercise of a reasonably prudent person in the same or similar circumstances, know, or should know and upon the exercise of reasonable care has a significant probability of causing personal physical and associated emotional and mental harm and devaluation of real property interests to others, including Plaintiff.

33. Defendants breached that duty by negligently, recklessly and/or intentionally siting, constructing and operating the BRF project knowing that the constant and sometimes exacerbated noise levels and infra sound levels which would be produced by the operation of the BRF project would directly and proximately cause Plaintiff, and each of them to differing degrees suffer adverse physical symptoms including annoyance, headaches, dizziness, rapid heartbeat, jitteriness, hearing problems, sleeplessness and associated mental and emotional symptoms including irritability, anxiety, sluggishness, anger and other symptoms enumerated herein.

34. The physical, mental and emotional symptoms identified herein and suffered by Plaintiff, are directly and proximately caused by Defendants' conduct and shall continue for the reasonably foreseeable future, if not becoming more pronounced and debilitating as time progresses. It is further reasonably anticipated that at some point in the future, Plaintiff will be forced to relocate their sportsmen's club and abandon this real property.

35. At no time has Plaintiff contributed whatsoever to the harm described herein.

**WHEREFORE**, Plaintiff prays this Court enter judgment against Defendants for special and general compensatory damages and punitive damages in excess of $75,000.00, with interest and costs and for such other and any further relief including as this Court shall deem just and proper, both at law and equity.

PLAINTIFF DEMANDS A TRIAL BY JURY.

**STEVEN LYONS, JR.:**
**By Counsel**

**/s/ Henry E. Wood, III, Esquire**
Henry E. Wood, III #4117
WOOD LAW OFFICE, L.C.
4628 Pennsylvania Avenue
PO Box 826
Charleston, WV  25323
304-345-9663 (phone)
hwood@hwoodlaw.com
